**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CRAIG WATSON, | : | |
| | : | Civil Action No. 11-3751 (RMB) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN D. ZICKEFOOSE, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

Petitioner <u>pro se</u>                  Counsel for Respondent
Craig Watson                              Mark Christopher Orlowski
F.C.I. Fort Dix                           Asst. U.S. Attorney
Fort Dix, NJ  08640                       District of New Jersey
                                          Trenton, NJ  08608

**BUMB**, District Judge

   Petitioner Craig Watson, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241,[1] challenging the calculation of his sentence. The

---

   [1] Section 2241 provides in relevant part:

   (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
   (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Respondent is Warden D. Zickefoose.

Because it appears from a review of the relevant record that Petitioner is not entitled to relief at this time, the Petition will be dismissed.

## I.   BACKGROUND

On or about November 12, 1992, Petitioner was arrested by Philadelphia, Pennsylvania police for alleged possession of a controlled substance and related charges. Petitioner pleaded guilty to these state charges and, on May 3, 1993, he was sentenced to a term of imprisonment of 11 months and 15 days to 23 months.

On November 16, 1992, while the state charges were pending, Petitioner was taken into temporary federal custody pursuant to a Writ of Habeas Corpus Ad Prosequendum in connection with unrelated pending federal criminal charges. On July 26, 1993, after sentence had been imposed in state court, Petitioner was sentenced in federal court to an aggregate sentence of 248 months' imprisonment, to be followed by a three-year term of supervised release. The federal sentence was silent as to the state sentence. See United States v. Watson, Criminal No. 92-0672 (E.D. Pa.). Petitioner was returned to state custody the same day.

On October 1, 1993, less than eleven months after he was first taken into state custody, Petitioner was paroled from his

state sentence, but remained in custody for a further period of 52 days. All other time between the date of his arrest in November 1992 through October 1, 1993, was credited by state authorities to his state sentence. On November 23, 1993, Petitioner was released from state custody to the U.S. Marshals Service to begin serving his federal sentence.

The Bureau of Prisons calculated Petitioner's sentence as beginning on November 23, 1993, when he was released to federal authorities. In addition, the Bureau of Prisons awarded Petitioner 52 days credit for time in state custody that was not credited by state authorities to his state sentence, the period from October 2, 1993, through November 22, 1993.

State authorities had originally advised the Bureau of Prisons that <u>no</u> time from November 12, 1992 through November 22, 1993, was credited to Petitioner's state sentence, a period of approximately 376 days. In reliance on this advice, the BOP originally awarded Petitioner 376 days of prior custody credit. This error was corrected by a 2011 memo which advised the Bureau of Prisons that Petitioner was credited by state authorities with all time from his arrest through October 1, 1993, when he was paroled from his state sentence. Accordingly, the BOP revised its calculation of Petitioner's sentence, awarding him prior custody credit only for the 52 days during which Petitioner remained in state custody after his parole. Assuming that

Petitioner receives all good conduct time available to him, his projected release date is now April 25, 2012.

Petitioner seeks, in this matter, credit for the full 376 days from his arrest by state authorities in November 1992 until he appeared to begin serving his federal sentence on November 23, 1993.

## II. ANALYSIS

Respondent asserts that Petitioner is not entitled to habeas relief because he did not exhaust his administrative remedies with respect to his challenge to the calculation of his sentence.

More specifically, on May 11, 2011, Petitioner submitted an Informal Resolution Form challenging the "rescission" of the 376-day prior-custody credit that he had previously been awarded. The Warden responded on May 23, 2011, that the Correctional Systems Management Department had requested Petitioner's records from the Philadelphia Records System and that Petitioner would be informed when the Warden received confirmation on Petitioner's sentence computation status. On May 31, 2011, Petitioner filed Remedy No. 642545-F1 with the Warden, again asserting that he was entitled to 376 days of prior-custody credit. On June 17, 2011, the Warden responded similarly that Petitioner's records had been requested and that he would be informed as soon as the Warden received confirmation on the issue. Petitioner did not further pursue his administrative remedies. This (undated) Petition was

4

received by this Court a few days later, on June 30, 2011.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to

5

prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."[2]  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the

---

[2] "This rule does not require the inmate to file under the Administrative Remedy Program before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), Inmate Accident Compensation claims(28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D),[ or other statutorily-mandated administrative procedures]." 67 F.R. 50804-01, 2002 WL 1789480 (August 6, 2002).  These exceptions are not relevant here.

Regional Director signed the response.[3]  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

Here, Petitioner abandoned his administrative remedies at the BP-9 level, when the Warden responded that the relevant records had been requested.  He does not assert that further administrative appeals would have been "futile," nor do the facts suggest that.[4]

To the contrary, the BOP's own regulations suggest that, at the very least, pursuit of the available administrative remedies would have provided this Court with an appropriate administrative record for review or, at the most, would have provided Petitioner some portion of the very relief requested, as explained below.

The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, United States v. Wilson, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and the Attorney General has delegated that authority to

---

[3] Response times for each level of review are set forth in 28 C.F.R. § 542.18.

[4] To the extent Petitioner considered that any delay occasioned by the record request impaired his rights, he could have treated the Warden's response as tantamount to no response and could have appealed.  See 28 C.F.R. § 542.18 ("the inmate may consider the absence of a response to be a denial at that level").

the Director of the Bureau of Prisons, 28 C.F.R. § 0.96 (1992).

Computation of a federal sentence is governed by 18 U.S.C. § 3585, and is comprised of a two-step determination of, first, the date on which the federal sentence commences and, second, the extent to which credit is awardable for time spent in custody prior to commencement of the sentence.

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(a), (b).

"Multiple terms of imprisonment imposed at different times run consecutively unless the Court orders that the terms are to run concurrently."  18 U.S.C. § 3584(a).

The BOP, however, in the exercise of its discretion, has authority to designate as a place of federal confinement, nunc pro tunc, the facilities in which a federal prisoner such as

8

Petitioner served an earlier state sentence.  See Barden v. Keohane, 921 F.2d 476, 480-83 (3d Cir. 1990) (a defendant is entitled to "fair treatment" on his application for a nunc pro tunc designation); 18 U.S.C. § 3621(b).[5]  The decision of the BOP is subject to judicial review only for abuse of discretion.  Barden, 921 F.2d at 478.

Pursuant to BOP Program Statement 5160.05, "State institutions will be designated for concurrent service of a federal sentence when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system."  P.S. 5160.05 ¶ 3(a) (2003).  The BOP's authority to designate a state institution for concurrent service of a federal sentence is delegated to Regional Directors.  The Program Statement specifically addresses requests by prisoners for a nunc pro tunc designation.

> (4) **Inmate Request.**  Occasionally, an inmate may request a nun pro tunc (i.e., occurring now as though it had occurred in the past) designation.  As a result of the decision in Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990), the Bureau considers an inmate's request for pre-sentence credit toward a federal sentence for time spent in service of a state sentence as a request for a nunc pro tunc designation.

---

[5] Section 3621(b) provides that, "The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable ... ."

> (a) In <u>Barden</u>, the court held that the Bureau must consider an inmate's request for concurrent service of the state and federal sentences.
> - However, there is no obligation under <u>Barden</u> for the Bureau to grant the request by designating a state institution retroactively as the place to serve the federal sentence.
>
> (b) This type of request will be considered regardless of whether the inmate is physically located in either a federal or state institution. Information will be gathered, if available, to include:
> - a copy of the federal and state J&Cs
> - the State sentence data record to include jail credit, and
> - any other pertinent information relating to the federal and state sentences.
>
> (c) In making the determination, if a designation for concurrent service may be appropriate (e.g., the federal sentence is imposed first and there is no order or recommendation regarding the service of the sentence in relationship to the yet to be imposed state term), the RISA will send a letter to the sentencing court (either the chambers of the Judge, U.S. Attorney's Office, and/or U.S. Probation Office, as appropriate) inquiring whether the court has any objections. Regardless of where the original inquiry is directed, the U.S. Attorney's Office and U.S. Probation Office will receive a courtesy copy.
>
> (d) If, after 60 days, a response is not received from the sentencing court, the RISA will address the issue with the Regional Counsel and a decision will be made regarding concurrency.
>
> (e) No letter need be written if it is determined that a concurrent designation is not appropriate. ...

P.S. 5160.05, ¶ 9(b) (emphasis added).

Here, consideration of the BOP regulations that would have governed resolution of Petitioner's claim and that provided for

the Regional Director's exercise of discretion with respect to Petitioner's particular type of claim, compels this Court to conclude that exhaustion would not have been futile.

In the alternative, this Court finds that the Bureau of Prisons did correctly determine the commencement date of Petitioner's federal sentence and did correctly determine that he was entitled to 52 days of prior-custody credit for the period from October 2, 1993, through November 22, 1993.  As Petitioner did not pursue his appeals to the Regional Director level or permit the creation of an appropriate administrative record, this Court can make no finding as to whether it would have been an abuse of discretion to deny Petitioner a discretionary nunc pro tunc designation of the state institution as a place of serving his federal sentence from July 26, 1993, when the federal sentence was imposed, through October 1, 1993, when Petitioner was paroled from his state sentence.

The Petition will be dismissed without prejudice, for failure to exhaust administrative remedies.

### III. CONCLUSION

For the reasons set forth above, the Petition will be dismissed without prejudice.  An appropriate order follows.

<pre>
                                s/Renée Marie Bumb
                                Renée Marie Bumb
                                United States District Judge
Dated: March 15, 2012
</pre>

12